This action was brought by the Texas Short Line Railway Company to recover damages sustained by reason of the Texas Pacific Railway Company refusing to accept for transportation from Grand Saline, Texas, to New Orleans, La., and New Iberia, La., certain carloads of salt, at the rate published by the latter for such service, the damages sued for consisting of what plaintiff had to pay to have the salt transported between such points over another route. Defendant filed a general denial, except as to matters which it admitted.
It pleaded specially, admitting that it published the rate for salt as alleged, the tender of the salt and tender of the published rate as alleged, *Page 388 
and that it refused the cars first on bills of lading of plaintiff and afterwards on bills of lading of defendant.
In other respects the material part of defendant's pleading (section 3 of the answer) consists of (1) an allegation that said tariff applied only to salt tendered by the manufacturers or owners of salt and not to other carriers. (2) That plaintiff had no interest in the salt except as a common carrier to whom it had been delivered for transportation, that the owner of the salt was the Lone Star Salt Company, at Grand Saline, which company, instead of delivering the salt to defendant, delivered it to plaintiff, the Texas Short Line Company; that the Texas Short Line Company had no published tariff or rates in effect between it and defendant from Grand Saline to said points, and in accepting said freight at the tariffs published by this defendant it committed an unlawful act in that it accepted same for less than the regular tariff rate and was guilty of discrimination and of giving rebates; that the Lone Star Salt Company had the right to route its freight as it saw proper and could have delivered same direct to this defendant, as its industry was located on its track, and could have availed itself of defendant's published rate; but not having done so, it was required by law to pay a rate based on the sums of the locals applicable to the Texas Short Line Company from Grand Saline to said points, and that in attempting to deliver this freight to this defendant plaintiff was trying to evade the law, and was doing so for the purpose of preventing this defendant from receiving its legitimate share of the salt shipped by the Lone Star Salt Company at Grand Saline. (3) An allegation that the salt was tendered in foreign cars, when defendant had ample cars of its own in which to carry said salt, for the use of which defendant would have to pay a per diem charge while in its control. It also alleged a contract between the Lone Star Salt Company and the Texas Short Line Company, whereby the former had agreed to turn over to the latter for shipment two-thirds of its output of salt from Grand Saline, which the latter's manager is enforcing, and for this reason it is attempting to accept shipments to points reached by other lines than its own, and at a rate which gives it no revenue at all, the sole purpose being to deprive this defendant of its just revenue from the business of the Lone Star Salt Company, and to prevent it from coming into competition in any way with the Texas Short Line Company as to said business, and for this reason accepts the shipments at a rate which applies only via the Texas Pacific Railway Company and not in connection with the Texas Short Line Company, and for this reason is willing to give this defendant the entire rate plus a switching charge, the purpose being to enable plaintiff to carry out a contract that deprives defendant of its right as a common carrier to obtain business of an industry located on its line.
Defendant further says that, being a common carrier, it is not deprived of its rights to protect its business legitimately, and to meet all lawful competition; that to force this defendant to accept this freight *Page 389 
tendered it by the Texas Short Line Railway Company upon the theory that the Texas Short Line Railway Company was the owner of the freight, would, in effect, be making this defendant a party to the contract made by the Texas Short Line Railway Company and the Lone Star Salt Company, and would prevent this defendant from competing for a commodity, and for the business of an industry located directly upon its track, and would make it an aider and abettor in carrying out a contract unlawful in itself, and would be against the business interests of this defendant; that the plaintiff herein has no right to tender this freight to this defendant upon the same terms and conditions as it would be tendered to this defendant by the owner or manufacturer of same; that the Texas Short Line Railway Company is not enabled to carry out its contract with the Lone Star Salt Company as to this class of freight, destined to the points mentioned, and this defendant should not be forced to furnish the means for carrying out a contract unlawful in itself, tendered upon an unlawful rate, and the carrying out of which would seriously impair and affect the revenue of this defendant, and prevent it from competing for business that it is legitimately entitled to.
Defendant expressly denies that it has refused to receive from the plaintiff herein any freight that it would be required to receive as a connecting carrier, under the law. It expressly denies that the Texas Short Line Railway Company had any interest in the freight tendered by it to this defendant; it expressly denies that the Lone Star Salt Company has ever tendered it any freight to be forwarded, and tendered at the same time the legal rates and charges upon the same. It further states that the owner and manufacturer of said salt could have delivered same to this defendant, and same would have been carried upon the regular published rates of this defendant, without any delay or discrimination.
It further avers that the Texas Short Line Railway Company has accepted the freight mentioned in its petition upon an unlawful rate, and for this defendant to accept same, upon prepaid charges advanced to it, would make it a party to such unlawful transaction. It further avers that it would be inequitable, unjust and unlawful for it to be forced to accept said freight, and thus be required to furnish a competitor an advantage that would practically cut off all competition as between this defendant and said competitor for the business at Grand Saline.
It further states that under the allegations of plaintiff's petition, plaintiff has not been deprived of any revenue by the refusal on the part of this defendant to accept and forward said freight, when if this defendant had received same, upon the rate as tendered to it, it would have been guilty of an unlawful act, and its revenue would have been seriously impaired, and its right to receive said business direct would practically be taken away from it.
To this part of defendant's pleading plaintiff demurred upon the ground that such matters constituted no defense, which demurrer was sustained Plaintiff in its supplemental petition alleged further that by *Page 390 
contract with the owner of the salt mentioned plaintiff had, before said salt was tendered defendant, become bound to transport said salt to its point of destination and to transport all salt tendered by said owner for transportation, which said contract covered a large amount of tonnage and was for many years and is of great value to plaintiff, and under said contract plaintiff became the bailee of the salt tendered to defendant and was in possession thereof as such bailee when same was tendered to defendant. A demurrer by defendant to the above was overruled.
After the evidence, the court directed the jury to return a verdict in favor of plaintiff for a certain sum, and there is nothing questioning the amount, if the judgment be otherwise correct.
The testimony introduced was undisputed. The parties are common carriers at Grand Saline. The Texas Pacific Railway, it seems, runs to New Orleans, La., and does not run to New Iberia, La., but has a connection in Louisiana with that point. Its rate on salt shipments from Grand Saline to said points, as alleged by plaintiff, was published and in force at the dates these shipments, together with such rate, were offered on defendant's bill of lading and refused. The Texas Short Line Railway Company is, as its name imports, a short line running out of Grand Saline, and connecting with other line or lines. A contract was shown between the Lone Star Salt Company and one Henry M. Strong, which, after reciting that the former had salt works of great value located at Grand Saline, Texas, which produced and shipped large quantities of salt by rail and is in direct competition with other salt works which have the benefit of several railways at point of origin, and that only one railway was in existence at Grand Saline, which is detrimental to its interests and embarrassed it in its competition in many ways, and that the party of the second part, Mr. Strong, and his associates contemplate another line of railway into Grand Saline which will afford the Lone Star Salt Company an additional outlet for its product, provided said party of the second part can be assured for a definite time of a sufficient revenue to warrant the construction of said line, binds the Lone Star Salt Company to furnish said party of the second part or his assigns for transportation for the term of twenty-six years, and for renewals thereof, 66 per cent of all tonnage moved by rail from its works, said term to begin when the line shall be open for traffic to a point of intersection with some line of existing railway other than the Texas Pacific Railway. In consideration whereof the party of the second part agreed to carry all such freight and to make to the company on same the lowest rate made, quoted or given by any common carrier or carriers between points, so that the company shall never be compelled to pay more freight to the second party, or his assigns, for any service than it would have to pay for the same service to any other carrier or carriers.
It was also shown that the Lone Star Salt Company delivered the cars of salt in question to the Texas Short Line Railway Company at Grand *Page 391 
Saline, and gave them the same rate as that published by the Texas Pacific Railway Company from Grand Saline to the points named, and issued its bill or bills of lading to the Lone Star Salt Company for same which routed the shipment via the Texas Short Line Company and the Missouri, Kansas Texas Railway Company. The cars were all Missouri, Kansas Texas cars except one Texas Pacific Railway car. Instead of sending same as routed in the bill, plaintiff at Grand Saline tendered the cars to the Texas Pacific Railway Company for shipment as aforesaid.
The first error assigned is the court's action in sustaining the demurrer to the third section of said answer.
The third assignment complains of the refusal of a charge requested by defendant directing a verdict in favor of defendant on the evidence.
Under these assignments appellant presents certain propositions. One is: "The act of Congress regulating commerce between the various States requires carriers engaged in such traffic to establish and publish a schedule of rates, and makes it unlawful for any carrier to charge, demand or collect any greater or less compensation for transportation than specified. Had appellant and connecting lines knowingly entered into the contract in question, whereby less was charged than specified, they would have incurred severe penalties; and if appellant had collected different rates from those specified, it would have been as guilty as if it had made the contract."
The above seems to have reference to appellant's schedule of rates, and the sufficient answer to it would seem to be that appellant was not asked to carry this freight for more or for less than its scheduled rate.
Another proposition is: That under the interstate commerce act two kinds or classes of rates are metnioned: Single line rates, to wit, rates of a single carrier upon its route, and joint rates, being rates over routes of several carriers. That joint line rates can be legally made and established only by agreement between the carriers, and the published rate must so specify and show, and that where joint through rates are not established by agreement between connecting carriers the only lawful rate between the carriers would be a combination of locals, which may consist of a through rate published by one carrier plus the local rate of the other carrier. Another proposition is that an interstate rate from a given point to a given point must either be a joint through rate legally made, filed and published, or a combination of the local rates, and unless it is a joint through rate or a combination of locals, neither rate would be a lawful rate.
These propositions seem to be aimed at the rate charged the Lone Star Salt Company by appellee. The argument is that as appellee had no agreement with appellant for a joint rate to the points named, and hence had no such published tariff in connection with it, if this shipment was to move over appellant's line to said points, the only lawful rate upon which it could move would be a combination of locals. In other words the contention is that the Lone Star Salt Company could have *Page 392 
shipped this salt over appellant's line at the published tariff, but appellee could not. We can not recognize a distinction against appellee which is based on the necessity of a joint through rate with appellant, for the reason that such a rate could exist only by agreement and appellant was not required to make any agreement in the subject with appellee, and from the position it takes here, it naturally would enter into no agreement of the kind. Besides there was no need of an agreement between them for a joint through rate for the amount published, if appellee was entitled to avail itself of appellant's rate as any other person. The rate was unquestionably open to all persons having freight between said points, without discrimination. Unless, therefore, there existed some special reason why appellee was incapacitated from shipping the freight, or appellant from accepting it, the latter was not justified in rejecting it. The mere fact that the Texas Short Line Railway Company had no agreement with appellant for a particular rate as a joint through rate, was no reason for refusing its own rate when it was the latter's established rate for that service.
The following charges were refused and are presented as propositions:
"You are instructed that the plaintiff herein had no interest as bailee, or otherwise than as a common carrier, in the shipments of salt tendered by the Lone Star Salt Company and set out in its petition herein; that in receiving said salt it was required by law to charge the shipper the legal rate for transporting same; that the undisputed evidence shows that the plaintiff had no regularly published tariffs on salt from Grand Saline to the points where said shipments of salt were destined, and that under this state of facts it was obliged to charge a combination of the local rates, which was in excess of the amount it did charge. And you are further instructed that the defendant herein was not obliged to receive said shipments, except upon a prepayment of the legal rates.
"If you find and believe, therefore, that the defendant herein was not tendered the lawful rate upon said shipments, you will find for the defendant."
"You are instructed that the contract between the plaintiff herein and the Lone Star Salt Company, by which said Lone Star Salt Company obligates itself to give to said plaintiff two-thirds of its entire output, is void as contrary to public policy, and that it vested in the plaintiff herein no right in any shipment of salt tendered it for transportation as a common carrier; that the plaintiff herein by virtue of its charter as a railway company only exercises the rights vested in a railway company, and that said contract did not vest it with any rights not already possessed by it as a railway company, and when salt was delivered to it, it was delivered to it as a common carrier, and as a common carrier it was governed by all the rates, rules and regulations governing the movement of freight, State and interstate; that when it received the shipments of salt mentioned herein from the Lone Star Salt Company, it was required to charge said company the legal rate, and if it failed or refused to do so it was guilty of a crime, under the law, and the *Page 393 
defendant herein was not obliged or required to protect said unlawful transaction, or to transport the freight mentioned herein upon such unlawful rate, and if you find it did refuse to transport same upon an unlawful rate, you will find for the defendant."
The Texas Short Line Railway Company, so far as appears, had no agreement with connecting carriers for a joint rate to the points in question, and therefore had no such rate to publish. The points were not on its line. It was probably obliged to charge a combination of rates to such points when it carried the freight over its own line and over connecting lines. Here it was not necessary to charge a combination of rates, as the Texas and Pacific Railway started from Grand Saline and was a common carrier, and it was only necessary for appellee to charge the salt company the rate fixed by that line if it could send the salt over that line. This it attempted to do, and the tender it made to the Texas and Pacific Railway Company was the prepayment of the legal rate.
Appellant does not undertake to explain wherein the contract between appellee and the salt company was illegal or void as contrary to public policy, and we perceive no reason why in itself it was not a valid contract. This being so, appellee had an interest to protect in resorting to the rate offered the public by the appellant from Grand Saline.
There is nothing of a substantial nature in any of the grounds upon which appellant defends its refusal to carry the freight. If all the cars had been cars of other companies, and appellant would, as it pleaded, have had to pay a charge for them while on its lines, it could nevertheless have transferred the salt to its own cars, of which they allege they had an ample number. The contention that the published rate was available only to individuals and producers of salt and not to carriers offering salt is untenable. The fact that appellee gave the salt company a bill of lading routing the shipment over its own line and over the Missouri, Kansas Texas Railway at the Texas Pacific rate, when the combination of locals over that route was greater than such rate, might, if the shipment had been carried out according to the bill of lading, have exposed appellee to penalties, but this, we think, furnished no legal reason for appellant's refusal to carry the salt when tendered to it. Appellant could have violated no law in accepting this freight at its published rate. There was no basis for appellee having to tender the Texas 
Pacific Railway Company any combination of rates, when it published a rate of its own for the particular service. The fact that appellee made no haul of this freight over its own line, so as to be in the usual position of a connecting carrier, it seems to us, makes no difference. It had become the bailee of the salt, charged with the duty of transporting it to the points named, and a deviation in the routing was a matter which might have concerned it and the salt company, but not appellant. It was enough that the salt was tendered to appellant upon its bill of lading and its published rate, the salt being in appellee's hands as its custodian for the purposes of its transportation to said points. *Page 394 
We utterly fail to see justice in appellant's contentions. It admits that it would have had to carry the salt at the rate tendered, if it had been offered by the salt company direct. As far as its compensation or its traffic was concerned the result to it was the same whether offered by the one or the other. It received the business. The manifest motive of the refusal was to drive its only competing line at Grand Saline to resort to other connections, involving a combination of local rates, and thereby render the latter incapable of performing its contract with the salt company. Appellant having established a lower rate than the salt could have been taken to said points over other lines, appellee was by its contract with the salt company required to carry it at that lower rate, and this it could only do over appellant's line. The natural result of appellant's establishment of such rate and its refusal to receive salt from appellee, would be to embarrass and destroy the latter. In our opinion there was nothing shown in defendant's answer nor in the testimony which warranted it in rejecting the shipment. Whatever the situation may have been between appellee and the Lone Star Salt Company as to the legality of their contract arrangement and the bill of lading issued to the latter, appellee was in fact custodian of the salt for the purposes of its shipment to New Orleans and New Iberia, and appellant's duty was to carry it when regularly tendered.
It is true appellee caused the salt to be transported over the Missouri, Kansas Texas Railway as routed in its bill of lading to the salt company, and the rate it charged was less than the combination of locals over that route. But appellee did not do this until after tendering it to appellant and appellant had refused it. This refusal was the occasion of appellee sending the salt over the other route. Appellant, it seems to us, is in no position under these circumstances to set up this act of the appellee as a justification for its refusing to accept the shipment.
Affirmed.
Writ of error refused. *Page 395